28115, 28146. SINCLAIR REFINING COMPANY *v.* MEEK; and *vice versa.*

Decided July 16, 1940.

· *Alston, Foster, Moise & Sibley, H. P. Ragland, Clifton Brannon,* for plaintiff in error.

*G. Eugene Ivey, Irving S. Nathan, W. S. Mann,* contra.

MacIntyre, J. Doris W. Meek brought his action in two counts against the Sinclair Refining Company and its agent, Paul Gilreath Jr., seeking recovery of damages for what he termed in count 1 "malicious trespass and false imprisonment," and in count 2 "malicious slander." To each of these counts the defendant corporation filed its demurrers. To count 1 it demurred generally and specially; to count 2 it demurred both generally and specially. After sustaining the special demurrer to count 1, the judge overruled the general demurrer to that count. He sustained the general demurrer to count 2. The court provided, in its order sustaining the special demurrers to count 1, that the paragraphs attacked thereby should be stricken, but that the plaintiff might have twenty days within which to amend. The plaintiff elected not to avail himself of this opportunity for amendment; and the questions presented here are whether the judge's rulings on the demurrers were correct.

■ The court sustained the general demurrer to count 2 of the petition. The plaintiff contends in the cross-bill of exceptions that this was error. The place at which the slander was alleged to have been committed was not the place where the corporation had placed its agent for discharging the duties of his agency. Thus the following rule of law is applicable: "A corporation is not liable for damages resulting from speaking false, malicious, and defamatory words by one of its agents, even where in uttering such words the speaker was acting for the benefit of the corporation, and within the scope of his agency, unless it affirmatively appears that the agent was directed or authorized by the corporation to speak the words in question. *Behre* v. *National Cash Register Co.*, 100 *Ga.* 213 [27 S. E. 986, 6 Am. St. R. 320]." *Southern Railway Co.* v. *Chambers*, 126 *Ga.* 404, 408 (55 S. E. 37, 7 L. R. A. (N. S.) 926). Applying this rule, the judge did not err in sustaining the general demurrer to this count.

■ Count 1 of the petition alleged, in part: (Paragraph 18) "That defendant Gilreath left to go to Cartersville shortly thereafter, and told Mr. R. Holsenbeck to keep plaintiff under surveillance until he (Gilreath) returned, which Holsenbeck agreed to do." (19) "That plaintiff understood this to mean that he was in the custody of Holsenbeck until defendant Gilreath returned, and plaintiff was deprived of his personal liberty and imprisoned against his wishes, without cause and without process of law, being forced to remain there on the project at the office against his wishes." (20) "That plaintiff is informed that defendant Gilreath had also arranged with one other person to keep plaintiff in custody and watch him until Gilreath returned." Paragraphs 19 and 20 were specially demurred to, on the ground that the plaintiff had undertaken to set forth the facts upon which he based the conclusion set out in paragraphs 19 and 20, and the facts pleaded did not authorize such a conclusion. The judge struck paragraphs 19 and 20 on special demurrer, and the plaintiff excepts thereto in the cross-bill of exceptions. We recognize the rule that a person need not make an effort to escape or to await application of open force (and possibly suffer physical injury) before he can recover for false imprisonment. It is enough if restraint be put upon a person by force or fear. 31 A. L. R. 316. The facts alleged in the petition, relating to what happened after the search of the plaintiff

by the defendant, Gilreath, did not indicate such a threat as would induce a reasonable apprehension upon the part of the plaintiff that force would be used by Holsenbeck or any other person if the plaintiff undertook to assert his liberty or to depart from the place where he was left by Gilreath. Upon leaving the premises Gilreath did not order the plaintiff to remain where he was, or to remain upon the premises until he could go and get the sheriff and return. Nor did he instruct Holsenbeck to detain the plaintiff if he attempted to depart. If the plaintiff was to be unwillingly detained, it would have been as easy for Gilreath to take him in his car and deliver him to the sheriff as it would have been to put him in the custody of a third person and drive to the county site, or elsewhere, to get the sheriff, and then return. The first would have involved only one trip, and the latter would have involved two trips. It further appears from the petition that when the sheriff and Gilreath returned, the sheriff questioned the plaintiff and searched the near-by offices of the company for which the plaintiff worked, and upon failing to find the money they all departed. So far as the petition shows, after the arrival of the sheriff neither the sheriff nor any one else arrested or detained the plaintiff against his will, or did anything relative to the plaintiff. except question him and search the office of the company for which he worked. This is not a case based upon a theory of submission to arrest under appropriate legal authority, or a case of arrest or detention by an officer at the instance of Gilreath which would, from the very nature of things, more likely induce a reasonable apprehension that force would be used unless the plaintiff submitted to detention than if Gilreath had merely said, "Watch the plaintiff (keep him under surveillance) until I can get the sheriff and return with him." It seems to us that the only reasonable conclusion from the allegations in paragraph 19 and the last clause in paragraph 20, even if we construe the petition in favor of the pleader (which gives him an advantage not contemplated by law), is that Gilreath intended to go and get the sheriff and at a future time (not then and there) to arrest and imprison the plaintiff. Or, construing the petition most strongly against the pleader, it seems that Gilreath was going to get the sheriff in order that he might question the plaintiff, and otherwise investigate the matter to see if any arrest should be made. Indeed, when Gilreath returned with

the sheriff, there is nothing in the record to show that the plaintiff was arrested or detained against his will while an investigation was being carried on by the sheriff. The mere watching or keeping the plaintiff under surveillance was not, under the facts pleaded, a detention of the plaintiff against his will. Threats to imprison are not imprisonments. To constitute false imprisonment, there must be actual physical restraint whether by force or fear. The judge did not err in striking paragraphs 19 and 20 of count 1 of the petition on special demurrer.

■ We now come to the question raised in the main bill of exceptions by the defendant corporation, whether the judge erred in overruling the general demurrer to count 1 of the petition. The action in this count is for "malicious trespass and false imprisonment." 25 C. J. 545, § 11, declares that "The restraint constituting a false imprisonment may arise out of words, acts, gestures or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit; and it is sufficient if they operate upon the will of the person threatened, and result in a reasonable fear of personal difficulty or personal injuries." Our Supreme Court in *Westberry* v. *Clanton,* 136 *Ga.* 795 (72 S. E. 238), held: "False imprisonment at common law, and elsewhere, consists in the unlawful detention of the person of another, for any length of time, whereby he is deprived of his personal liberty (3 Bl. Com. *127; 12 Am. & Eng. Enc. Law, 721; 19 Cyc. 319; Civil Code (1910), § 4447, which is a codification of the common law), and furnishes a right of action for damages to the person so detained. The only essential elements of the action being the detention and its unlawfulness (3 Bl. Com. *127), malice and the want of probable cause need not be shown. Chivers *v.* Savage, 85 Eng. Com. Law R. 696; Brandt *v.* Craddock, 27 L. J. (N. S.) 314; 12 Am. & Eng. Enc. Law, 726; citing, among other cases, Rich *v.* McInery, 103 Ala. 345 [49 Am. St. R. 32]." Where the petition seeks a recovery for alleged unlawful search of the plaintiff's person, in which there is a laying on of the hands and false imprisonment, the plaintiff's right to recover for such unlawful search is not dependent upon a subsequent false imprisonment. *Burrow* v. *Southern Railway Co.,* 139 *Ga.* 733 (78 S. E. 125). The allegations in this count, as to Gilreath having in effect accused the plaintiff of stealing $95 from Gilreath's car, further stated: "That defendant Gilreath Jr. indi-

cated he did not believe plaintiff's statement that plaintiff had not been inside Gilreath's automobile, and demanded that plaintiff remain there and be searched; and although plaintiff had work to do on the project and had no intention or desire to remain there with defendant Gilreath, and had no wish to be searched like a common criminal in front of his friends and fellow workers, that the manner of Gilreath's actions and tone of his voice made it clear that there would be further serious trouble if plaintiff did not allow himself to be searched, so plaintiff, in view of all these circumstances permitted himself to be detained there against his wishes, and to be searched. . . That the defendant Gilreath personally searched plaintiff all over in the presence of several people, rolling up plaintiff's pants' legs and opening up his clothes, and he did not find his money on plaintiff's person." From these allegations it can not be said as a matter of law that the plaintiff could not reasonably assume that force would be used to restrain him from leaving or refusing to be searched if he did not consent to being searched. Under the facts as pleaded in count 1 of the petition, sufficient facts are alleged to show false imprisonment. It therefore becomes a question of fact for the jury to determine whether the plaintiff reasonably believed that there would be further serious trouble, or that force would be used, or that a personal difficulty would arise, if he did not allow himself to be detained and searched. We do not think that the judge erred in overruling the general demurrer to count 1 of the petition.

*Judgment affirmed on both bills of exceptions. Broyles, C. J., and Gardner, J., concur.*