37112.   GARNER *v.* MEARS.
37113.   TREADWELL *v.* MEARS.

DECIDED APRIL 17, 1958.

*James R. Venable, Walter R. Brown,* for plaintiffs in error.
*Smith, Swift, Currie & McGhee, J. Robin Harris,* contra.

TOWNSEND, Judge. ■ The testimony of the plaintiff, which was substantiated by that of other witnesses except as to matters which took place within her room, was to the effect that about 2:30 in the morning, while she was asleep, there was a loud knocking on the door as though someone were beating on it with flashlights; that she asked who was knocking and the men replied, "Deputy sheriffs"; that she just barely cracked the door to see what was wanted and they then flashed the light in her eyes and gave the door a heavy swing which threw the plaintiff around and against a metal knob on a chair, knocking a hole in her ankle sufficient to cause bleeding; that after they knocked her down one of the men went into the living room and the

other into the kitchen and searched these rooms; that she asked what was meant and they then told her they were looking for Red Pope. It appears that the plaintiff lived in a house owned by her daughter, who was not present at the time, and that the man being sought was the father of the divorced husband of the plaintiff's daughter, and that he had never lived on the premises and had either never been there or had not been there for two or three years. The plaintiff testified that she at first denied knowing a Red Pope, but it eventually occurred to her that they might be looking for Hubert Pope and she then gave them the telephone number of another relative, after which they left. Records of the office of the Sheriff of Fulton County were introduced in evidence showing that Beckel had been sworn in as a special deputy sheriff of that county.

Insofar as the first three grounds of the motion for new trial contend that the charges complained of were error because not adjusted to the evidence in that there was no evidence (a) that either of the defendants was or claimed to be an officer, (b) that there was no evidence of an unlawful entry into the plaintiff's room, (c) that there was no evidence of restraint because "the testimony of the plaintiff shows that she was under no restraint whatsoever, but walked about the room, sat down, and conversed with the defendant Treadwell and was at no time restrained of her liberty in any manner whatsoever," and (d) that there was no evidence of any search or seizure, these grounds are entirely without merit. From the substance of the testimony set out above, there is some evidence that the defendant Treadwell and his partner both claimed to be deputy sheriffs and that one had been sworn in as a special deputy; that they forced their way into the room the instant the door was unlocked, and pushed it against the plaintiff's body with such violence as to knock her over, and conducted a search not only in that room but in the kitchen. The circumstances in their entirety were such that the plaintiff might well have felt that she was restrained of her liberty, when roused from bed at 2:30 in the morning by two men who informed her they were law enforcement officers, forced their way into her bedroom, searched the premises, and demanded information from her. "The restraint constituting a false im-

prisonment may arise out of words, acts, gestures or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit; and it is sufficient if they operate upon the will of the person threatened and result in a reasonable fear of personal difficulty or personal injuries." *Mansour* v. *Mobley*, 96 *Ga. App.* 812, 818 (101 S. E. 2d 786) ; *Sinclair Refining Co.* v. *Meek*, 62 *Ga. App.* 850, 854 (10 S. E. 2d 76). As is stated in *Harper* v. *Hall*, 76 *Ga. App.* 441 (2) (46 S. E. 2d 201): "Where distinct issues are presented in pleadings, it is not error for the trial judge to give in charge to the jury the law relating thereto, provided the same is supported by some evidence, even though very slight and consisting of inferences drawn from sworn testimony."

■ As to special ground 2, it is contended that the instruction is further erroneous as implying an attempt to arrest without a warrant, as confusing illegal restraint with unlawful entry, and because it fails to define the legal meaning of "restraint." The charge was as follows: "The plaintiff has alleged that the said Treadwell and Beckel held the plaintiff in illegal restraint for approximately twenty minutes. I charge you that if you should find from the evidence that the said Treadwell and Beckel did in fact hold the plaintiff in restraint without a warrant for her arrest, such unlawful entry into the plaintiff's home amounts to a wilful and intentional wrongful act, in violation of Article 1, Section 1, Paragraph 16 of the State Constitution, and § 26-1502 of the Code of Georgia of 1933." Our Code (§ 26-1501) defines false imprisonment as a violation of the personal liberty of a person consisting in confinement or detention of such person without sufficient legal authority. To find that the plaintiff was illegally restrained the jury would necessarily have to find that she was restrained without sufficient legal authority, i.e., without a warrant for her arrest, the case not coming under those in which an arrest without a warrant would be proper. The court therefore properly limited the charge on illegal restraint to a situation in which the jury would find from the evidence that no warrant was involved, which was entirely proper. Nor was it error, in the absence of a request for more particularity, to fail to charge the meaning of the word "restraint" as here used.

It is true that this excerpt from the charge is subject to the criticism that it confuses unlawful entry with illegal restraint; however, the pleadings alleged both acts on the part of Treadwell and his companion, and the proof goes to both issues. Accordingly, the charge, although not strictly applicable to the issues involved, was not prejudicial to the defendant and is no cause for reversal. *Smith* v. *State*, 179 *Ga.* 791 (4) (177 S. E. 711). Special grounds 1, 2 and 3 are without merit.

■ Special grounds 4 and 6 complain that in giving the following instructions to the jury the court authorized the recovery of double damages for the plaintiff: "I further charge you that if you should find that the plaintiff is otherwise entitled to a recovery, you would be authorized to find damages for her medical expenses, for her physical pain and suffering attendant upon her physical injury, general damages for mental suffering and wounded feelings when caused by a wanton, voluntary or intentional wrong, as well as punitive damages. . . The law also declares that in some torts the circumstances may be so aggravating that the jury may, if they wish to do so, give additional damages called punitive damages. This is to deter the wrongdoer from repeating the alleged act again, and in this case the jury would have a right to take that into consideration and say whether or not you would allow the plaintiff any punitive damages. . . I charged you that plaintiff alleges and contends that she suffered a physical injury and shock and mental anguish and that you would allow damages, if you believe otherwise she is entitled to damages, on that account; that there is no standard by which this can be measured except by the enlightened consciences of impartial jurors. Then I charged you that they claimed that there were some aggravating circumstances about this occasion, that they are entitled to punitive damages as I charged you to deter the wrongdoer from repeating the offense and that you could, if the jury believes that the plaintiff is entitled to recover punitive damages, allow damages as punitive, but that if you found for the plaintiff on one or both these alleged injuries for damages, that you just lump them together in one verdict."

While ordinarily damages for wounded feelings are not a

recoverable element of damage in an action based on negligence alone, compensatory damages for these elements are recoverable in the case of a wilful and intentional tort. *Dunn* v. *Western Union Telegraph Co.,* 2 *Ga. App.* 845 (59 S. E. 189), *Stephens* v. *Waits,* 53 *Ga. App.* 44 (184 S. E. 781), *American Security Co.* v. *Cook,* 49 *Ga. App.* 723 (176 S. E. 798), *Ga. Ry. &c. Co.* v. *Davis,* 6 *Ga. App.* 645 (2) (65 S. E. 785), *Southern Ry. Co.* v. *Jordan,* 129 *Ga.* 665 (59 S. E. 802), *Baldwin* v. *Davis,* 188 *Ga.* 587 (4 S. E. 2d 458), *Johnson* v. *Morris,* 158 *Ga.* 403 (123 S. E. 707), *John Deere Plow Co.* v. *Head,* 68 *Ga. App.* 502 (23 S. E. 2d 523), and similar cases cited by the plaintiff in error are not authority to the contrary of what is here held. All of them hold that it is error to instruct the jury so as to allow double damages for wounded feelings. The occasion usually arises because of a charge on the part of the trial court which allows damages for mental suffering and wounded feelings under Code § 105-2003 and then includes that part of Code § 105-2002 which allows exemplary damages where there are aggravated circumstances as compensation for the wounded feelings of the plaintiff. The court here did not give in charge any part of Code § 105-2003, and only that part of Code § 105-2002 which allows exemplary damages to deter the wrongdoer from repeating the trespass. Code § 105-2003 was of course not applicable here for the reason that special damages for physical injury were sought. In *Franklin* v. *Evans,* 55 *Ga. App.* 177 (189 S. E. 722) it was held, in an action for slander, that it was proper to give a charge on the measure of general damages for humiliation and wounded feelings and to allow exemplary damages under that part of Code § 105-2002 which refers to deterring the wrongdoer from repeating the trespass. The court there stated (page 179): "However, damages awarded the plaintiff for the purpose of deterring the wrongdoer from a similar trespass do not appear to us to be compensatory damages for wounded feelings, but merely damages awarded the plaintiff to protect him from future similar injury on the part of the defendant." We recognize that no special damages were sought in the *Franklin* case, for which reason Code § 105-2003 was pertinent to that case, whereas here there are certain special damages sought by way of medical bills. Also,

here there was a physical assault alleged, whereas in the *Franklin* case and others cited such was not the case. However, in *Beckworth* v. *Phillips*, 6 *Ga. App.* 859 (3) (65 S. E. 1075), an assault and battery case, it was held: "In an action for assault and battery, especially where there is a prayer for punitive damages, the enlightened conscience of the jury affords the measure." The charge here is not subject to the criticism that it allowed double damages in favor of the plaintiff against the defendants.

■ Error is assigned in special ground 4 on an excerpt from the charge to the effect that there is no negligence in this case, but that plaintiff alleges a wilful and intentional trespass. It appears from the record that the court had given instructions applicable to negligence cases; that at the conclusion of his charge counsel for the plaintiff pointed out to him that there was no negligence in the case, and the court then gave a recharge on this issue. The error is contended to be in unduly emphasizing the plaintiff's contentions, in complying with a request made orally and in the presence of the jury, and in implying an opinion as to what had been proved. None of these contentions are meritorious. The court was entirely correct in withdrawing any charge which would have allowed the plaintiff to predicate a verdict on mere negligence, and insofar as he did that, the charge was favorable to the defendants. The court did state, "If you believe that these gentlemen who represented the defendant in this case, Mrs. Garner" did certain things, the defendant would be liable. To state a legal principle in the form of a hypothesis is not to express an opinion (*Atlanta Laundries* v. *Goldberg*, 71 *Ga. App.* 130 (4), 30 S. E. 2d 349) and insofar as the instruction indicated that the men charged with illegal entry represented Mrs. Garner or the Garner Bonding Company, this fact was undisputed and there was testimony to the effect by C. E. Garner, son of the owner and manager of the company, who stated: "During February of 1954, we had a Mr. Beckel and Mr. Treadwell employed. . . As to what business they had out there on Georgia Avenue that night; they were trying to apprehend a bond forfeiture by the name of Hubert Pope . . . as to whether they do this sort of thing all the time or not, they sign bonds and try to catch bond forfeitures; that is the duty of all

employees. It is within the scope of their employment to try to catch anybody who forfeited his bond. I employ them to sign bonds and catch bond forfeitures. As to whether we hunt for them in the daytime or at night, a lot of times we get information in the daytime and at night the boys follow it up. We do our raiding at night, most of it. . . As to whether it is my testimony that going around to residences at 2:30 in the morning is what we do every night; we don't pick out the hour of 2:30; we raid from about 10 o'clock at night until daylight. As to whether we are out on raids every night; we may not go every night; we may go a dozen times tonight and may not go at all tomorrow night, but if we have any reason to believe that any person or persons is at a residence, we will raid it that night. . . It is my testimony that my people made raids as my employees without warrants from the city and that is what happened in this case." It is of course perfectly legal for bail to arrest or recapture his principal. Code (Ann.) § 27-904. If, however, in the course of such procedure his employee so authorized should commit an unlawful assault, illegal entry, or other like tort, this would not take the act of the employee outside the scope of his employment so as to relieve the bonding company in an action against it for damages resulting therefrom. Cf. *Frazier* v. *Southern Ry. Co.*, 200 *Ga.* 590 (2) (37 S. E. 2d 774). This portion of the charge was therefore not subject to any of the objections urged against it.

■ The general grounds of the motion for new trial, not being argued or insisted upon, are treated as abandoned.

The trial court did not err in denying the motions for new trial.

*Judgment affirmed. Gardner, P.J., and Carlisle, J., concur.*