## 61430. KENDRICK v. METROPOLITAN PSYCHIATRIC CENTER, INC. et al.

SHULMAN, Presiding Judge.

Plaintiff brought suit against defendants for false imprisonment and for assault incident thereto. Upon the close of plaintiff's presentation of evidence, the trial court granted defendants' motion for directed verdict. We reverse.

The pertinent facts giving rise to plaintiff's action are as follows: Plaintiff, the mother of a voluntary patient at the Metropolitan Psychiatric Center, Inc. ("Center") (an emergency receiving facility under Code Ann. § 88-404.1) went to the Center on March 28, 1978, at approximately 5:00 p.m., in response to a phone call from defendant Parker (an alcohol and drug counselor at the Center), requesting her to come to the Center, presumably to discuss her daughter's treatment and condition with defendant Dr. Uzee. Believing the plaintiff to be an alcoholic in acute withdrawal, Dr. Uzee urged the plaintiff to have herself voluntarily committed. When she refused and attempted to leave the Center, she was forcibly brought back inside by defendants Parker and Shelton. She was then involuntarily admitted into the Center and assigned a room, whereupon she was forced to disrobe and her body and clothing were searched. She was confined in her room until 7:30 a.m. the following morning (approximately 14 and a half hours) and then released.

Defendants' motions for directed verdict were granted on the ground that their actions were in compliance with Code Ann. § 88-401 et seq. The trial court held that, while plaintiff's detention was obviously involuntary, it was not illegal and, thus, did not constitute false imprisonment. See Code Ann. § 105-901, which sets forth the elements of the offense of false imprisonment. We disagree.

The provisions relevant to the instant case read, respectively, as follows: Code Ann. § 88-404.2. Admission to an emergency receiving facility. "(a) Any physician within this State may execute a certificate stating that he has personally examined a person within the preceding 48 hours and found that, based upon observations set forth in the certificate, the person appears to be an alcoholic, a drug dependent individual, or a drug abuser requiring involuntary treatment. A physician's certificate shall expire seven days after it is executed. Any peace officer, within 72 hours after receiving such certificate, shall make diligent efforts to take into custody the person named in the certificate and to deliver him forthwith to the nearest available emergency receiving facility serving the county in which the patient is found, where he shall be received for examination.

"(b) The appropriate court of the county in which a person may

be found may issue an order commanding any peace officer to take such person into custody and deliver him forthwith for examination, either to the nearest available emergency facility serving the county in which the patient may be found, where such person shall be received for examination, or to a physician who has agreed to examine such patient and who will provide, where appropriate, a certificate pursuant to subsection (a) of this section to permit delivery of such patient to an emergency receiving facility pursuant to said subsection (a). Such order may only be issued if based either upon an unexpired physician's certificate, as provided in subsection (a) of this section, or upon the affidavits of at least two persons who attest that, within the preceding 48 hours, they have seen the person to be taken into custody and that, based upon observations contained in their affidavit, they have reason to believe such person is an alcoholic, a drug dependent individual, or a drug abuser requiring involuntary treatment. The court order shall expire seven days after it is executed.

"(c) Any peace officer taking into custody and delivering for examination a person, as authorized by subsections (a) or (b) of this section, shall execute a written report detailing the circumstances under which such person was taken into custody. The report and either the physician's certificate or court order authorizing such taking into custody shall be made a part of the patient's clinical record."

Code Ann. § 88-404.4. Examination in emergency receiving facility. "A patient who is received by an emergency receiving facility shall be examined by a physician as soon thereafter as possible, but in any event within 24 hours, and may be given such emergency treatment as is indicated by good medical practice. The patient must be released within 24 hours of his admission unless the examining physician concludes that there is reason to believe that the patient may be an alcoholic, a drug dependent individual, or a drug abuser requiring involuntary treatment and executes a certificate to that effect within 24 hours of the patient's admission to the emergency receiving facility. Within 24 hours of the execution of the physician's certificate, the patient shall be transported, as provided in section 88-402.17, to an evaluating facility where he shall be received under the provisions of section 88-405.4."

It is readily apparent that Code Ann. § 88-404.2 (b) is not applicable, since no court order formed the basis for plaintiff's examination at the Center. Nor is subsection (c) applicable, since a peace officer did not "deliver" the plaintiff to the Center. The finding, however, that defendants complied with both §§ 88-404.2 (a) and 88-404.4 is necessary to a determination that plaintiff's

detention and confinement were lawful.

While we would agree with defendants' contention that a peace officer's involvement is not a necessary prerequisite to compliance with § 88-404.2 (a) (if a person happens to be present at a treatment facility, a peace officer is not needed to bring that person to a facility), we believe that the certificate requirement set forth in that provision is essential. It provides a safeguard against the unilateral involuntary confinement of an individual.

To justify an individual's involuntary detention or confinement, Code Ann. §§ 88-404.2 (a) and 88-404.4 require the concurring opinion of two physicians "that there is reason to believe that a patient may be an alcoholic, a drug dependent individual, or a drug abuser requiring involuntary treatment." In other words, the first physician's diagnosis that an individual is in need of treatment (and a certificate to that effect) authorizes the involuntary taking of that person to an emergency receiving facility to undergo, within 24 hours, an examination by a second physician. If upon that second examination the examining physician concludes that the patient is in need of or requires treatment, then that patient can be legally confined in an evaluation facility without his or her consent. In that facility, the patient is subject to "such treatment as is indicated by good medical practice." Code Ann. § 88-405.4.

As stated above, Code Ann. § 88-404.4 requires that a patient brought to a receiving facility be examined by a physician within 24 hours. Defendants would argue that the opinion of Dr. Uzee (that the plaintiff needed treatment) was the initial detention described in § 88-404.2 (a) and that, since plaintiff was released from the Center within 24 hours after her initial detention, the standards of §§ 88-404.2 (a) and 88-404.4 were not violated. We disagree. We will not permit the defendants to circumvent the requirements of Code Ann. § 88-404.2 (a) by disassociating defendant Uzee from his role at the Center. It is clear that in the instant case Dr. Uzee acted in the capacity of an examining physician at an emergency receiving facility. That this is so may be readily ascertained by a review of the certificate executed by Dr. Uzee after his examination of appellant. The certificate cites the predecessor of Code Ann. § 88-404.4, which also referred to the second opinion necessary to involuntarily commit a person. The certificate recommended, as would a certificate made under § 88-404.4, that appellant be transferred to an evaluating facility. It is abundantly clear that such a recommendation is within the province of the second physician contemplated by the statutory scheme of Code Ann. Ch. 88-4, not the first physician, whose responsibility does not include certifying patients for commitment to an evaluating facility. If a physician other than Dr. Uzee did not, at a

prior time, determine that the plaintiff was in need of treatment, thus providing authority for her to be brought to and kept at the Center for a second opinion, we conclude that the plaintiff's detention and confinement would be unlawful. Plaintiff's evidence showed that to be the case, making out a prima facie case for recovery. It follows that the direction of a verdict for appellees was error.

It is because the subject matter of this case involves the extremely sensitive area of deprivation of liberty that we have required such strict compliance with the procedures mandated by Code Ann. Ch. 88-4. The procedural safeguards contained in that chapter are obviously there for the purpose of ensuring that individual rights are not eroded in the name of medical expediency. We consider rigid adherence to the designated procedures especially important in light of the relative ease with which one may be taken from a first interview with a physician to involuntary confinement and treatment. The Code prescribes maximum time limits for the steps leading to treatment, but no minimums. If two physicians agree that an individual needs involuntary treatment as contemplated by Code Ann. Ch. 88-4, the elapsed time between the patient's arrival at the first doctor's office or at the hospital and the onset of involuntary psychiatric treatment could be no more than the time occupied by two interviews. We consider that to be the outer limits of due process and are unwilling to reduce the procedural safeguards any further.

This case illustrates the danger of short cuts in the system. Appellant was asked to speak to her daughter's doctor. She did so and, without being allowed to leave, was placed in a posture in which she would have been unable to prevent immediate and involuntary psychiatric treatment. The only physician who examined her executed a certificate which would authorize such treatment. It is therefore apparent that we cannot permit even well intentioned departures from the statutory scheme for involuntary hospitalization.

Since we are reversing the grant of defendants' motions for directed verdict for the reasons stated above, we need not address the additional grounds for reversal raised by the plaintiff.

*Judgment reversed. Birdsong and Sognier, JJ., concur in the judgment only.*

DECIDED MAY 28, 1981 —
REHEARING DENIED JUNE 18, 1981 —

*Ted D. Spears,* for appellant.

*William S. Shelfer, Jr., Lorraine Hess, Hunter S. Allen, Jr.,* for appellees.