## 71916. WILLIAMS v. SMITH.
### (348 SE2d 50)

CARLEY, Judge.

Appellant is the plaintiff in a multi-count tort action. Counts One and Two of appellant's complaint alleged claims for false imprisonment. Count Three was for medical malpractice. Summit Psychiatric Centers, P.C. (Summit) and appellee Dr. Randy Smith were named as the defendants in appellant's suit. Appellee is a psychiatrist and an employee of Summit. Discovery established the following: During her work lunch break, appellant went to Summit seeking psychological counseling. She was eventually seen by appellee. Appellee determined that appellant's mental condition was such as to require treatment. Construing the evidence most strongly in favor of appellant, she was told by appellee that she was not free to return to work and that she would be hospitalized. It is undisputed, however, that appellant did in fact leave freely and that she did return to work. However, pursuant to OCGA § 37-3-41, appellee executed a certificate as to appellant's apparent need for involuntary treatment. Acting on that certificate, peace officers took appellant into custody later that evening and delivered her to an "emergency receiving facility" for purposes of examination. See OCGA § 37-3-41. The examining physician determined that appellant did not require involuntary treatment and she was released. See OCGA § 37-3-43 (a).

On this evidence, appellee moved for summary judgment as to all three counts of appellant's complaint. The trial court conducted a hearing and granted appellee's motion, leaving Summit as the only defendant in the action. Appellant appeals from this grant of summary judgment in favor of appellee.

1. Count One of appellant's complaint alleged that she had been

falsely imprisoned when, during her original interview with appellee, he told her that she could not leave the Summit premises because she was in need of hospitalization. Appellant contends that genuine issues of material fact remain regarding this false imprisonment claim.

"False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." OCGA § 51-7-20. " 'The restraint constituting a false imprisonment may arise out of words, acts, gestures, or the like, which *induce a reasonable apprehension that force will be used if plaintiff does not submit*, and it is sufficient if they operate upon the will of the person threatened and result in *a reasonable fear of personal difficulty or personal injuries.'* " (Emphasis supplied.) *Sinclair Refining Co. v. Meek*, 62 Ga. App. 850, 851 (3) (10 SE2d 76) (1940). However, "the evidence in this case demands a finding that [appellee] did nothing to induce a reasonable fear in [appellant] that there would be a personal difficulty or personal injury if [she] had refused the command or request made." *West v. Baumgartner*, 124 Ga. App. 318, 331 (6) (184 SE2d 213) (1971), rev'd on other grounds 228 Ga. 671 (187 SE2d 665) (1972). The evidence is undisputed that, notwithstanding anything that appellee may have said to her, appellant was at all times allowed to move freely about the Summit premises and that, when she left, she did so without incident. It thus appears that appellant was at no time physically restrained by virtue of any "threat" of immediate detention at the hands of appellee. "Threats to imprison are not imprisonments. To constitute false imprisonment, there must be actual physical restraint whether by force or fear." *Sinclair Refining Co. v. Meek*, supra at 854 (3). The trial court did not err in granting appellee summary judgment as to Count One. See generally *Sinclair Refining Co. v. Meek*, supra; *West v. Baumgartner*, supra. Compare *Mansour v. Mobley*, 96 Ga. App. 812, 828 (10) (101 SE2d 786) (1957); *Garner v. Mears*, 97 Ga. App. 506, 507 (1) (103 SE2d 610) (1958).

2. Count Two of the complaint was a claim of false imprisonment based upon appellee's execution of the certificate pursuant to which appellant was taken into custody for an examination. Appellant contends that jury issues remain as to whether appellee "exercised reasonable medical care in diagnosing [her] mental condition and acted properly based upon that diagnosis." *Carter v. Landy*, 163 Ga. App. 509, 510 (295 SE2d 177) (1982). Resolution of this issue requires consideration of the general principles applicable to the tort of false imprisonment and the correlation between those principles and the specific statutory provisions of OCGA § 37-3-40 et seq.

False imprisonment is an intentional tort, not a tort of negligence. See *Stewart v. Williams*, 243 Ga. 580 (255 SE2d 699) (1979). "In an action to recover damages for illegal arrest or false imprison-

ment the only essential elements are the arrest or detention and the unlawfulness thereof. [Cit.]" *Scott Housing Systems v. Hickox*, 174 Ga. App. 23, 24 (1) (329 SE2d 154) (1985). With regard to the element of "unlawfulness" in the tort of *false* imprisonment, the law has always made a fundamental distinction between a detention effectuated pursuant to process and detention which is not predicated on process. "[A]n action for false imprisonment will lie where a person is unlawfully detained under a void process, or under no process at all, and can not be maintained where the process is valid, no matter how corrupt may be the motives of the person suing out the process or how unfounded the imprisonment may be." *Grist v. White*, 14 Ga. App. 147, 151 (2) (80 SE 519) (1913). Thus, when the detention is predicated on *no process*, false imprisonment *is* an available remedy and liability depends upon whether a detention without supporting process was legally authorized under the circumstances. See generally *Collins v. Sadlo*, 167 Ga. App. 317 (306 SE2d 390) (1983). When the detention is predicated upon *procedurally valid process*, false imprisonment is *not* an available remedy, regardless of the motives upon which the process was secured, because detention effectuated pursuant to procedurally valid process, such as an arrest warrant, is not "unlawful." " 'Where the arrest is by valid process regularly sued out, action for malicious prosecution is the only remedy. . . .' " Where detention is maliciously procured by civil process, rather than criminal, the appropriate cause of action would be for malicious use of process. See *Baldwin v. Davis*, 188 Ga. 587 (1) (a) (4 SE2d 458) (1939); *Page v. Citizens Banking Co.*, 111 Ga. 73, 86 (7) (36 SE 418) (1900). In the event that procedurally *void or defective* process is secured, there is a cause of action for false imprisonment, *but only* if the process was itself secured in bad faith. See *Thorpe v. Wray*, 68 Ga. 359, 366-367 (12) (1881); *Page v. Citizens Banking Co.*, supra; *Butler v. Tattnall Bank*, 140 Ga. 579, 584 (79 SE 456) (1913); *Massachusetts Cotton Mills v. Hawkins*, 164 Ga. 594, 599 (139 SE 52) (1927); OCGA § 51-7-21.

OCGA § 37-3-40 et seq. provides for the involuntary examination, hospitalization, and treatment of individuals for mental illness. Although there is no provision for issuance of an arrest "warrant," the law does provide for an analogous procedure whereby such "process" may be issued as will authorize the lawful taking of an individual into custody for purposes of receiving an examination. Under OCGA § 37-3-41 (a), one may be taken into such custody by peace officers pursuant to a physician's certificate and, under subsection (b) of that statute, a court order can serve as an alternative form of process. In *Kendrick v. Metro. Psychiatric Center*, 158 Ga. App. 839 (282 SE2d 361) (1981), we first dealt with the tort of false imprisonment in the context of these statutory provisions for involuntary mental examination

and treatment. In *Kendrick*, the issue of the "unlawfulness" of the detention was addressed and determined as in any other false imprisonment case by deciding whether the detention was predicated upon *procedurally* valid process. "It is because the subject matter of this case involves the extremely sensitive area of deprivation of liberty that we have required such *strict compliance with the procedures* mandated by [the applicable statutory provisions]. The *procedural safeguards* contained in [those provisions] are obviously there for the purpose of ensuring that individual rights are not eroded in the name of medical expediency. We consider rigid *adherence to the designated procedures* especially important in light of the relative ease with which one may be taken from a first interview with a physician to involuntary confinement and treatment." (Emphasis supplied.) *Kendrick v. Metro. Psychiatric Center*, supra at 842. Thus, the *Kendrick* decision is implicit authority for the proposition that a claim of false imprisonment based upon involuntary mental examination and treatment is analytically *identical* to any other claim for false imprisonment. The validity of this analysis expressed in *Kendrick* is supported by further authority. OCGA § 37-3-4 provides that a physician "who acts in good faith in compliance with the admission and discharge provisions of this chapter shall be immune from civil or criminal liability for his actions in connection with the admission of a patient to a facility or the discharge of a patient from a facility." Thus, one who is admitted as a patient pursuant to a physician's "good faith" compliance with the applicable procedures of OCGA § 37-3-40 et seq. has no right of recovery. This is unquestionably analogous to the general tort provision of OCGA § 51-7-21, whereby those who in "good faith" secure what proves to be a defective or void warrant are provided a defense to a false imprisonment claim. Appellant relies upon the following language in *Carter v. Landy*, supra at 510: "[T]he standard to determine whether or not the plaintiff was unlawfully detained, that is, deprived of her personal liberty for any length of time, was a *medical standard*." (Emphasis supplied.) Taken literally, this language is inconsistent with the recognized general principles of false imprisonment discussed above: That when the detention is pursuant to some form of process, the initial determination of "unlawfulness" relates to the procedural validity of that process, not to the factors which may have entered into the decision to seek its issuance. See generally *Grist v. White*, supra. The above-quoted language from *Carter* is also in seeming conflict with earlier authority. In *Kendrick*, supra, the recognized general principles of the law of false imprisonment were applied notwithstanding the fact that the detention was ultimately based upon a medical opinion. Moreover, our Supreme Court has made it clear that "[t]here is no such tort [as 'negligent false imprisonment']." *Stewart v. Williams*, supra at 581. For these

reasons, to the extent that *Carter v. Landy*, supra, could be construed as establishing a *medical negligence standard* for determining the "unlawfulness" of an involuntary detention pursuant to OCGA § 37-3-40 et seq., it must be overruled. We hold the following to be the applicable legal principles: Where one is taken into custody pursuant to a procedurally *valid* certificate of a physician authorizing involuntary mental treatment, the resulting detention is not "unlawful." Although such detention may give rise to other claims, a cause of action for false imprisonment is not among them. Where one is held in custody pursuant to a *void or defective* physician's certificate, there is a viable claim for false imprisonment, but only if the certificate was not issued in "good faith." Where, as in *Kendrick*, supra, the detention is not evidenced by some form of objective compliance by the physician with all applicable procedural process requirements, there is a viable claim for false imprisonment.

Applying these principles in the instant case shows that it is undisputed that appellant was taken into custody pursuant to a physician's certificate which complied in all procedural respects with OCGA § 37-3-41 (a). Compare *Kendrick v. Metro. Psychiatric Center*, supra. Such a certificate is analogous to an arrest warrant and authorizes detention for an emergency examination. The process being valid, and the detention pursuant thereto being lawful, it follows that appellee's negligence and motives, although relevant to his liability for other causes of action, were irrelevant to his liability for the tort of false imprisonment. *Stewart v. Williams*, supra. The trial court did not err in granting appellee summary judgment as to Count Two of appellant's complaint.

3. While there is no tort of "negligent false imprisonment," it is also true that " '[i]f the confinement is due to the defendant's negligence, the latter may be liable as for negligence, [and] the action is . . . governed by the rules and principles of the tort of negligence. . . .' " *Stewart v. Williams*, supra at 581. Count Three of appellant's claim was medical malpractice. With regard to this count, the trial court disregarded certain portions of appellant's evidence on the basis that it was hearsay. According to appellant, this was error and, when all the admissible and probative evidence is considered and construed most strongly in her favor, a genuine issue of material fact remains with regard to appellee's negligence. Appellee, in addition to asserting that the discounted portions of appellant's evidence were inadmissible hearsay, urges that the immunity provision of OCGA § 37-3-4 extends to a physician who negligently but in "good faith" issued a certificate for an involuntary examination. See generally *Wallace v. Hall*, 145 Ga. App. 610 (244 SE2d 129) (1978) (construing the "Good Samaritan Law").

The record shows that appellee filed his own affidavit, stating

that, in his assessment of appellant, he had "exercised that degree of reasonable care, skill and diligence exercised by other physicians and psychiatrists generally, under like conditions and similar circumstances." Appellant's opposing evidence falls into two broad categories. One portion of appellant's evidence is that ruled inadmissible as hearsay. It was to the following effect: At some time subsequent to the relevant events, another Summit physician had expressed to appellant and others that he disagreed with the appellee's original assessment of appellant's mental condition. The evidence shows that the physician to whom this statement was attributed had not been personally present during the interview of appellant conducted by appellee. There was no showing of the premise upon which this physician based his purported subsequent expression of disagreement with appellee's earlier assessment of appellant's then-existing mental state. The statement attributed to this physician did not constitute an assertion or inference that appellee had been negligent, only that the declarant did not agree with appellee's assessment. Where there is testimony showing a difference in views or individual practices among doctors, and where it is also shown that each view or practice is acceptable and customary, such evidence is insufficient to support a malpractice action. See *Hyles v. Cockrill*, 169 Ga. App. 132, 139 (12) (312 SE2d 124) (1983). Thus, even assuming that the statement attributed to this other Summit physician was not hearsay, it showed only the existence of that physician's differing view as to the diagnosis of appellant's mental state. It in no way rebutted appellee's assertion that he had exercised the requisite degree of care and skill in reaching his medical conclusion.

The remainder of the evidence submitted in opposition to appellee's motion showed that certain physicians who had subsequent personal contact with appellant were of the medical opinion that, *at that time,* she did not exhibit to them the need for involuntary treatment. Medical testimony merely as to a subsequent diagnosis of appellant is not probative evidence as to appellee's *negligence* in reaching an earlier contrary diagnosis. See generally *Howard v. Atlanta Cardio Pulmonary Assn.*, 171 Ga. App. 889 (321 SE2d 370) (1984).

Appellee thus introduced his own affidavit showing that he had committed no negligent act or omission. Appellant produced no relevant expert evidence that would authorize a finding that appellee did not exercise that reasonable degree of care and skill which would have ordinarily been employed by the medical profession generally, under *like* conditions and similar circumstances. Accordingly, even assuming that the immunity defense of OCGA § 37-3-4 is not viable in a malpractice action, the trial court did not err in granting appellee summary judgment as to Count Three. See generally *Parker v. Knight*, 245 Ga. 782 (267 SE2d 222) (1980).

*Judgment affirmed. Banke, C. J., Deen, P. J., McMurray, P. J., Birdsong, P. J., Sognier, Pope, Benham and Beasley, JJ., concur.*

DECIDED JUNE 17, 1986 —
REHEARING DENIED JULY 9, 1986 —

*Adele P. Grubbs*, for appellant.
*Terrance C. Sullivan, William H. Duckworth, Jr., Timothy N. Toler*, for appellee.