73989. DAVIS v. CHARTER BY-THE-SEA, INC. et al.
(358 SE2d 865)

BEASLEY, Judge.

There was a jury verdict for defendants Charter By-The-Sea and Dr. Thagard on plaintiff Davis' claims for false imprisonment (OCGA § 51-7-20) and assault (OCGA § 51-1-13).

Davis enumerates as error the denial of her motion for directed verdict at the close of the evidence and the giving of two jury charges requested by defendants.

1. The motion for directed verdict addressed only the false imprisonment claim, which is therefore all that will be considered here. *Gabrowski v. Radiology Assoc.*, 181 Ga. App. 298, 299 (2) (352 SE2d 185) (1986).

Such motion is appropriate only if there is no conflict in the evidence as to any material issue and the evidence, with all reasonable deductions therefrom, demands a particular verdict. OCGA § 9-11-50 (a); *Marriott Corp. v. American Academy of Psychotherapists*, 157 Ga. App. 497, 498 (1) (277 SE2d 785) (1981).

On review, this Court must view the evidence in the light most favorable to the party opposing the motion, as must the trial court in ruling on the motion. *United Fed. Savings &c. Assn. of Waycross v. Connell*, 166 Ga. App. 329, 330 (1) (304 SE2d 131) (1983); *Bryant v. Colvin*, 160 Ga. App. 442, 444 (287 SE2d 238) (1981).

In this light, the evidence showed that on October 7, 1984, Davis' daughter, a registered nurse, went to Davis' apartment late in the afternoon or early evening after conversing by phone with her. The call led the daughter to believe her mother, who had a long history of alcohol abuse, was inebriated. Upon arriving she found her mother not fully conscious or in control of herself, mentally or physically. The daughter attempted to help Davis and then called her brother. They wrapped Davis in a blanket and took her to Charter. Davis was then awake and struggling and refusing to go voluntarily to the hospital.

They arrived at Charter at 6:55 p.m. Davis had to be bodily carried by her children, both because of her drunken condition and because of her struggling. They explained Davis' circumstances and medical history as related to her current condition to defendant Dr. Thagard.

In his initial observation of Davis, Dr. Thagard noted slurred speech, staggering gait, bloated face, strong odor of alcohol, and combative and uninhibited behavior. As Director of Addictive Disease at Charter and a specialist in alcohol and drug addiction, Dr. Thagard testified that in his opinion, she was highly intoxicated, "uncontrollable" physically and mentally, "maniacal," somewhat incoherent, and disoriented. The children described her history, including prior treatment for hypertension. The daughter also signed a consent form authorizing treatment of her mother.

Upon examination, Dr. Thagard was unable to detect any diastolic blood pressure. He then called Dr. Tucker, an internist at Charter, who was not able to detect the blood pressure by regular examination, but did pick up a low pressure in Davis' leg. Tucker also noted that she was suffering tachycardia, was cramping, and appeared to be dehydrated. Plaintiff's own testimony was that she was "in shock" when she arrived at Charter.

Both doctors stated that, based on all these factors, they determined that Davis was medically unstable and should be admitted. The objective was to keep her until she became medically stabilized and non-intoxicated. She was placed in restraints for approximately two hours and given a mild sedative. The next morning, she was re-

leased at her insistence and against medical advice. Her blood pressure had then stabilized. Although Davis would not allow a blood sample to be taken upon admission, one was taken the next morning, and her blood alcohol was still .03. Dr. Thagard stated that, in his opinion, her blood alcohol level upon admission would have been .27. (The level at which one is intoxicated in Georgia is .10. OCGA § 40-6-392 (b) (3).) He also said that, at .30, most people become unconscious.

False imprisonment is the unlawful detention of the person of another, thereby depriving that person of his personal liberty. OCGA § 51-7-20. In order to prevail, plaintiff Davis must show that there was no legal justification for her restraint and treatment by the defendants. In an effort to do this, plaintiff relies on *Kendrick v. Metro. Psychiatric Center*, 158 Ga. App. 839 (282 SE2d 361) (1981), and *Williams v. Smith*, 179 Ga. App. 712 (348 SE2d 50) (1986), and their rulings concerning OCGA §§ 37-3-41 and 37-7-41.

Chapter 7 of Title 37, originally enacted in 1971, provides mechanisms for involuntary delivery of an alcoholic or drug abuser to an "emergency receiving facility," OCGA § 37-7-1 (9), for examination. Both sides agree that Charter was "certified" as an emergency receiving facility.

There has been much attention paid in this case to OCGA § 37-7-41, which provides two mechanisms for the involuntary delivery, by a peace officer, of a patient suffering from alcoholism or drug abuse to an "emergency receiving facility" for the purpose of obtaining an examination of that person. It envisions a civil arrest and custody and delivery, but it is not involved here, because Ms. Davis was brought by her children and not by a peace officer.

After admission pursuant to Article 3, Part 1, OCGA § 37-7-43 (a) requires that a patient must be examined by a physician within 24 hours (48 hours after July 1, 1985) and may be given emergency treatment in this period but must be released unless a certificate is executed which provides the basis for the transfer of the patient to an *evaluating* facility, OCGA §§ 37-7-1 (10) and 37-7-81. Despite contentions otherwise, it is not involved here because Ms. Davis was released within 24 hours.

Upon arriving at Charter, Davis was immediately examined by Dr. Thagard, who at that point was conducting the examination provided for by OCGA § 37-7-43, not the examination referred to in OCGA § 37-7-41 (a) which allows for "delivery-by-peace-officer" to an emergency receiving facility.

Appellant cites two cases for support of her position that there was no legal justification for holding and treating her: *Kendrick v. Metro. Psychiatric Center*, supra, and *Williams v. Smith*, supra.

In the first place, *Kendrick* is physical precedent only, because

two of the three judges ruling concurred in the judgment only. Rule 35 (b). Moreover, *Kendrick* is not persuasive because it involved a very different situation. The plaintiff's minor daughter was a voluntary patient at the hospital and plaintiff was tricked into coming into the facility for the ostensible purpose of discussing her daughter. While there, the doctor tried to have her voluntarily commit herself as an alcoholic, and when this failed, she was not allowed to leave. This same doctor then executed the certificate required by what is now OCGA § 37-7-43 (a), for transfer to an evaluating facility, after examining her against her will. (The transfer was not effectuated.) As far as the opinion reflects, there was no medical emergency and plaintiff had walked in under her own power. Defendants argued that the doctor's initial opinion that the patient needed treatment satisfied the requirements of OCGA § 37-7-41 (a), and since she was released within 24 hours, neither this section nor OCGA § 37-7-43 was violated as a matter of law. The Court was asked to rule on whether the *grant* of a directed verdict to the hospital and doctor was appropriate under those circumstances. It held that the same doctor could not provide both certificates or examinations, thus not justifying the trial court's conclusion that plaintiff's detention was legal *as a matter of law.*[1] It based the holding on the requirements of the laws then in effect, that each of these certifications be executed by a separate doctor. Thus there are material distinctions between the two cases. We point out, however, that we do not agree with the statement that the OCGA § 37-7-41 (a) certificate is required even in a non-peace officer delivery case.

*Williams* holds that, where a person is delivered to an emergency receiving facility by peace officers pursuant to a valid § 37-7-41 (a) certificate, false imprisonment, as a matter of law, is not an available remedy against the doctor executing the certificate. The present case does not involve delivery by a peace officer, but *Williams* also reiterates that false imprisonment may be a remedy where there is no valid process and states that, in such a situation, "liability depends upon whether a detention without supporting process was legally authorized under the circumstances." *Williams*, supra at 714.

The question in this case, then, is whether there was evidence of any other legal justification for receiving, examining, and treating Davis.

There were at least two theories which required the jury's consideration and precluded a directed verdict in plaintiff's favor. The evidence, both from plaintiff's daughter, the nurse, and from the two

---

[1] In 1982, the legislature amended both OCGA §§ 37-3-43 (psychiatric treatment) and 37-7-43 (treatment of drug abusers and alcoholics) to provide that the same physician or psychologist may execute both certificates.

doctors who examined her, was that they concluded that a medical emergency existed which, for plaintiff's safety as well as concern for others if she were not treated, see *Bradley Center v. Wessner*, 161 Ga. App. 576 (287 SE2d 716), aff'd 250 Ga. 199 (296 SE2d 693) (1982), required that she be treated. This defense was raised in the pleadings, and defendants requested and received, without objection from plaintiff, an instruction on this theory.

OCGA § 37-7-163 (e) provides that "[i]n cases of grave emergency where the medical staff of the facility in which an alcoholic . . . has been accepted for treatment determines that immediate surgical or other intervention is necessary to prevent serious physical consequences or death and where delay in obtaining consent would create a grave danger to the physical health of such person, as determined by at least two physicians, then essential surgery or other intervention may be administered without the consent of the person, the spouse, next of kin, attorney, guardian, or any other person. In such cases, a record of the determination of the physicians shall be entered into the medical records of the patient and this will be proper consent for such surgery or other intervention." The section also provides that any physician relying on such consent and who has acted in good faith has immunity from suit.

Plaintiff was brought to the hospital by her children, and her daughter signed the consent form authorizing her treatment. Therefore, there existed a jury question as to whether there was such a grave emergency and whether the consent of the daughter satisfied the "next of kin" reference in the statute. Even if it did not, the issue of whether the doctors could proceed under the legally implied consent provided for by this statute remained.

Absent a "grave" emergency under OCGA § 37-7-163, there could still be a question of whether the provisions of OCGA § 31-9-3 were applicable. OCGA § 37-7-163 (d) states that "Except as provided in subsections (b) [not at issue here] and (e) [set out above] of this Code section, consent to medical treatment and surgery shall be obtained and regulated by Chapter 9 of Title 31." OCGA § 31-9-3 provides that a medical "emergency" exists where, according to competent medical judgment, proposed treatment is reasonably necessary and a person authorized to consent under § 31-9-2 is not available and delay could jeopardize the health of the person affected. Under § 31-9-2 a child is not authorized to consent for a parent, presenting a question of whether an emergency existed so that consent could be implied under § 31-9-3 (b), given plaintiff's condition.

Thus, denial of plaintiff's motion for directed verdict was not error. *F. A. F. Motor Cars v. Childers*, 181 Ga. App. 821 (1) (354 SE2d 6) (1987).

2. Plaintiff also complains in her second and third enumerations

of two jury instructions. No objection was made to Charter's Request #11 by plaintiff after the charge was given, although the court specifically inquired of plaintiff if there were objections. It will not be considered for the first time on appeal. OCGA § 5-5-24 (a); *AAA Van Svcs. v. Willis*, 180 Ga. App. 18, 19 (3) (348 SE2d 475) (1986).

Davis did object to Thagard's Request #2: "If you should find that the entries by Dr. Thagard in the hospital chart contained essentially the same information that would have been required by him had he signed a certificate to have Mrs. Davis transported to an emergency receiving facility as I've described to you, and if you find that Charter-by-the-Sea is an emergency receiving facility, then you would be authorized to find that the plaintiff, Mrs. Davis, was appropriately admitted to this hospital and her desire not to stay would be immaterial."

The objection made was "I don't believe that is [in] accordance with the statute, Your Honor."

Defendants argue that this objection does not provide the required specificity to warrant consideration by the trial court or this court. We find a borderline objection that, although lacking in the detail it should have contained, informs the court that plaintiff was objecting on the ground that the charge did not comply with OCGA § 37-7-41 (a). Thus, the form of the objection marginally met OCGA § 5-5-24 (a). See *Christiansen v. Robertson*, 237 Ga. 711 (229 SE2d 472) (1976).

The pleadings show that plaintiff acknowledged that she was transported by her children and that her only claim against the hospital and the doctor was for the detention thereafter. The hospital defended on the basis of an emergency, which provided a totally independent basis for her detention and treatment.

The instruction set out above is erroneous in that there is no statutory or other precedent which would provide for the substitution of a chart recordation for the required certificate. See *Williams*, supra. It is undisputed, however, that plaintiff received an immediate examination pursuant to OCGA § 37-7-43, thus obviating the need for the certificate under OCGA § 37-7-41 as the legal basis for the continued detention. An emergency intervened and the further detention was validated by implied consent or consent of the daughter rather than a certificate. Thus, any error in this regard was harmless. See *DeKalb County v. Metro Ambulance Svcs.*, 253 Ga. 561 (322 SE2d 881) (1984).

*Judgment affirmed. McMurray, P. J., and Sognier, J., concur.*

DECIDED JUNE 4, 1987.

*James V. Pleasants, Donald R. Sullivan*, for appellant.

*Wallace E. Harrell, Philip R. Taylor,* for appellees.