S98G1817. RIDGEVIEW INSTITUTE, INC. v. WINGATE.
(520 SE2d 445)

HINES, Justice.

Wingate sought treatment for alcoholism and voluntarily admitted himself into Ridgeview Institute. He then sought a discharge against his physician's advice, and the physician initiated involuntary commitment proceedings; Wingate was later released. Ridgeview sued for payment for services and Wingate counterclaimed for false imprisonment. The trial court granted Ridgeview summary judgment on the false imprisonment claim, and the Court of Appeals reversed that portion of the trial court's judgment, reinstating the false imprisonment claim. *Wingate v. Ridgeview Inst.*, 233 Ga. App. 649 (504 SE2d 714) (1998). We granted certiorari to determine if the Court of Appeals properly construed OCGA § 37-7-22. Finding that it did not, we reverse.

When on March 22, 1993, Wingate voluntarily admitted himself into Ridgeview Institute, he signed an agreement containing a clause allowing a patient to request a discharge, in writing, at any time, which would be granted unless it was determined that discharge would be unsafe to the patient or others. Wingate stayed at Ridgeview seven days and was treated by Ridgeview staff physician

Dr. Seese until March 29, 1993, when, against medical advice, Wingate was discharged at his own request.

After discharge, Wingate began drinking and on May 18, 1993, again voluntarily admitted himself to Ridgeview, signing another, identical, agreement. Dr. Seese again treated him and on June 9, Wingate again asked for a discharge. However, Dr. Seese denied discharge stating the "[p]atient continues to minimize his need for treatment and severity of problem with alcohol. He is incapacitated by alcohol on a recurring basis." Dr. Seese then initiated involuntary commitment proceedings by completing Form 2021 supplied by the Department of Human Resources. The form was also signed by another Ridgeview physician, Dr. Bowling, and by the chief medical officer. It was filed on June 11 in the Cobb County Probate Court and the matter was set for a hearing on June 21, 1993. Prior to the hearing, Wingate contacted an independent physician, who examined him on June 16 and assumed his care. Wingate was finally discharged from Ridgeview on June 17, 1993, and began outpatient treatment under the independent physician.

1. OCGA § 37-7-22 (a) governs the discharge of voluntary patients who are admitted under the provisions of OCGA § 37-7-20 (a). The Court of Appeals held that OCGA § 37-7-22 (a) did not apply to Wingate's discharge because he was a voluntary patient for "treatment" rather than a voluntary patient for "evaluation" or "observation" under OCGA § 37-7-20 (a).[1] *Wingate,* supra at 650 (2). First, the analysis used by the Court of Appeals would leave a voluntary patient admitted for "treatment" without any statutory discharge rights short of recovery, see OCGA § 37-7-21 (a). Moreover, Wingate's admission for treatment is clearly contemplated by OCGA § 37-7-20 (a), which states in part: "The chief medical officer of any facility may receive for observation and diagnosis any patient 12 years of age or older making application therefor . . . If found to show evidence of alcoholism, drug dependence, or drug abuse and to be suitable for treatment, such person may be given care and treatment at such facility; and such person may be detained by such facility until discharged pursuant to Code Section 37-7-21 or 37-7-22." One who is admitted under OCGA § 37-7-20 (a) can be treated while remaining a voluntary patient, and OCGA § 37-7-22 (a)'s reference to voluntary patients under "subsection (a) of Code Section 37-7-20" includes those, such as Wingate, who admit themselves for treatment.

This is confirmed by the statutory definitions. OCGA § 37-7-20 (a) refers to a voluntary "patient" admitted for "observation and diagnosis," and OCGA § 37-7-22 (a) also refers to a "voluntary patient."

---

[1] OCGA § 37-7-20 (a) actually uses the term "observation and diagnosis."

Patient is defined as "any alcoholic, drug dependent individual, or drug abuser who seeks *treatment* under this chapter or any person for whom such *treatment* is sought." (Emphasis supplied.) OCGA § 37-7-1 (16). " 'Treatment' means the broad range of emergency, outpatient, intermediate, and inpatient services and care, including diagnostic evaluation. . . ." OCGA § 37-7-1 (20). Admission for treatment clearly includes admission for observation and diagnosis as those terms are used in OCGA § 37-7-20 (a).

2. To the extent that the Court of Appeals' opinion holds that the exclusive manner for the involuntary confinement of an alcoholic is through compliance with OCGA § 37-7-163 (e), it is in error. That Code section governs emergency situations posing the threat of serious physical consequences or death. It specifically applies only to "immediate surgical or other intervention," and imposes a higher standard of findings before involuntary surgical procedures or other drastic treatment can be undertaken. The standards for the involuntary retention of alcoholic patients are found in OCGA § 37-7-22 (a), and by that Code section's reference, in OCGA §§ 37-7-41, 37-7-61, and 37-7-81.

3. OCGA § 37-7-22 (a) requires that a voluntary patient who requests a discharge must be given one within 72 hours, unless the chief medical officer finds that the discharge would be "unsafe for the patient or others," in which case proceedings for involuntary treatment must be initiated under OCGA §§ 37-7-41, 37-7-61, or 37-7-81.

To initiate proceedings for involuntary treatment, Dr. Seese used Form 2021 provided by the Department of Human Resources, which is patterned on OCGA § 37-7-81 (a). That Code section requires that two physicians find Wingate to be an alcoholic in need of involuntary treatment, and that he does not meet the requirements for outpatient treatment set forth in OCGA § 37-7-90 (c). Dr. Seese indicated on the form that Wingate was an alcoholic who was incapacitated by alcohol on a recurring basis, and also reported certain observations and notations. The form was also signed by Dr. Bowling, who also reported his observations and notations, which make it clear that he concurred in Dr. Seese's diagnosis. The form as printed does not include any reference to a finding that Wingate did "not meet the outpatient treatment requirements of paragraphs (1), (2), and (3) of subsection (c) of Code Section 37-7-90," as specified for involuntary detention under OCGA § 37-7-81 (a).

Wingate contends that the physicians' responses and selections on the form did not satisfy OCGA § 37-7-22 (a) because that Code section requires that the chief medical officer of the facility, or, as in this case, the designee of the chief medical officer, see OCGA § 37-7-1 (4), find that releasing the patient would be "unsafe for the patient or others." Under OCGA § 37-7-22 (a), such a finding is a requirement

for the physician to pursue involuntary hospitalization under OCGA § 37-7-81 (a). The physicians found that Wingate was "incapacitated by alcohol . . . on a recurring basis." Although neither specifically wrote that releasing Wingate would be unsafe to himself or others, the finding that Wingate was incapacitated by alcohol was also a finding that releasing him would be unsafe to himself.

"Incapacitated by alcohol" is statutorily defined as the state in which "a person, as a result of the use of alcoholic beverages, . . . exhibits life-threatening levels of intoxication, withdrawal, or imminent danger thereof, or acute medical problems; or is under the influence of alcoholic beverages . . . to the extent that the person is incapable of caring for himself or protecting himself due to the continued consumption or use thereof." OCGA § 37-7-1 (13). A patient who is found to exhibit a "life-threatening" level of intoxication or withdrawal, or the imminent danger thereof, must necessarily also be considered to be unsafe to himself if discharged from a medical facility. So too a patient who is found to be "incapable of caring for himself or protecting himself" due to continued consumption of alcohol, or one who exhibits acute medical problems as a result of his use of alcoholic beverages.

Further, the specific observations of the physicians show that releasing Wingate would present a danger to himself. Dr. Seese based his finding that Wingate was incapacitated by alcohol on the observation that Wingate was at risk of relapsing if released. Dr. Bowling also noted that Wingate had severe liver disease but was unable to accept its severity. They both noted that Wingate would not accept treatment. Thus, although it would be the better practice for physicians to explicitly find that releasing a patient would be unsafe to the patient or others, a finding that a patient is incapacitated by alcohol on a recurring basis satisfies OCGA § 37-7-22 (a). These findings also showed that Wingate was unlikely to comply with outpatient treatment and therefore did not meet the outpatient requirements of OCGA § 37-7-90 (c) (3).[2]

The certificate used to initiate the involuntary treatment proceedings complied with OCGA § 37-7-22 (a)'s requirements. As a claim for false imprisonment will not lie when the detention was predicated on a valid process, the trial court properly granted summary judgment to Ridgeview on that claim. See *Williams v. Smith*, 179 Ga. App. 712, 716 (2) (348 SE2d 50) (1986).

*Judgment reversed. All the Justices concur.*

---

[2] These determinations also satisfied any requirement under Wingate's admission agreement that he be discharged unless his physician finds that his discharge would be unsafe to himself or others.

DECIDED SEPTEMBER 13, 1999 —
RECONSIDERATION DENIED OCTOBER 15, 1999.

*Troutman Sanders, Daniel S. Reinhardt, Jennifer K. Campbell, C. LeeAnn McCurry, Toni A. Friess, Ray H. McCard, Jr.,* for appellant.

*Chamberlain, Hrdlicka, White & Williams, Richard N. Hubert,* for appellee.

*Alston & Bird, Jack S. Schroder, Jr., Kim E. Anderson,* amicus curiae.