A06A1402. LINDSEY v. THE STATE.
(639 SE2d 584)

ELLINGTON, Judge.

Following a bench trial, the Superior Court of Gwinnett County convicted Phillip Lindsey of possession of methamphetamine, OCGA § 16-13-30. Lindsey appeals, challenging the court's denial of his motion to suppress evidence seized during the execution of a civil Order to Apprehend for mental health evaluation. Because the search exceeded the scope of a pat-down for weapons and because Lindsey was not at the time of the search under arrest, based on probable cause, for a criminal offense, we reverse.

Where, as here, evidence presented at a hearing on a motion to suppress is uncontroverted and there are no questions of credibility, we review de novo the trial court's application of the law to undisputed facts. *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994). The evidence at the hearing in this case established the following undisputed facts. On August 18, 2004, the Probate Court of Gwinnett County issued an Order to Apprehend pursuant to OCGA § 37-7-41 (b)[1] commanding "any peace officer ... to take [Lindsey] into custody" and deliver him to "a staffed Gwinnett mental health facility or Gwinnett medical center emergency room ... for an examination

---

[1] The appropriate court of the county in which a person may be found may issue an order commanding any peace officer to take such person into custody and deliver him forthwith for examination, either to the nearest available emergency receiving facility serving the county in which the patient is found, where such person shall be received for examination, or to a physician who has agreed to examine such patient and who will provide, where appropriate, a certificate pursuant to subsection (a) of this Code section to permit delivery of such patient to an emergency receiving facility pursuant to subsection (a) of this Code section. Such order may only be issued if based either upon an unexpired physician's certificate, as provided in subsection (a) of this Code section, or upon the affidavits of at least two persons who attest that, within the preceding 48 hours, they have seen the person to be taken into custody and that, based upon observations contained in their affidavit, they have reason to believe such person is an alcoholic, a drug dependent individual, or a drug abuser requiring involuntary treatment. The court order shall expire seven days after it is executed.

OCGA § 37-7-41 (b). See also OCGA § 37-3-41 (a) (authorizing orders to apprehend and transport for examination of mentally ill persons requiring involuntary treatment).

as prescribed by law." The basis for the order was that "upon affidavits on file in [the judge's] office" Lindsey was "alleged to be . . . a drug dependent person requiring involuntary treatment and . . . present-[ing] a substantial risk of imminent harm to himself/herself or others as manifested by either recent overt acts or recent expressed threats of violence which present a probability of physical injury to himself/herself or to other persons."

That day, an officer located Lindsey in a bar and asked him to step outside. After explaining the terms of the Order to Apprehend to Lindsey in a parking area outside the bar, the officer implemented the sheriff's department protocol that he followed whenever he placed an arrestee in the back of his patrol car. Specifically, the officer handcuffed Lindsey behind his back and then patted the outside of Lindsey's clothing. During the pat-down, the officer did not detect anything that felt like a weapon. The officer did, however, feel a pack of cigarettes[2] and "something else that was soft and it did feel like it would be a baggie of some sort" in Lindsey's pants pocket. Then, pursuant solely to the protocol, the officer "emptied [Lindsey's] pockets" looking for "weapons and contraband." The officer reached into Lindsey's pocket and removed a plastic bag, measuring approximately one inch by 1.5 inches and containing white powder which turned out to be a gram or less of methamphetamine. The officer placed Lindsey under arrest for possession of the drug and transported him to jail for booking, rather than to a mental health facility or emergency room for examination.

It is undisputed that at the time the officer reached into Lindsey's pocket he did not have probable cause to believe that Lindsey had committed any crime. Although Lindsey cooperated with the officer's execution of the Order to Apprehend and "did not resist arrest," there is no evidence that Lindsey consented to the search.

At the conclusion of the hearing on Lindsey's motion to suppress the methamphetamine, the trial court concluded that the search was permissible as being incident to an arrest. Lindsey contends that the search of his pockets exceeded the scope of what was necessary to ensure the officer's safety while transporting him pursuant to the probate court mental health evaluation order. In particular, Lindsey argues that the trial court erred in finding as a matter of law that the officer searched Lindsey pursuant to a lawful arrest, as authorized by OCGA § 17-5-1.[3] We agree.

---

[2] Lindsey denied having cigarettes in his pocket.

[3] When a lawful arrest is effected a peace officer may reasonably search the person arrested and the area within the person's immediate presence for the purpose of:
(1) Protecting the officer from attack;
(2) Preventing the person from escaping;

"Under [OCGA § 17-4-1[4]] a person is under arrest whenever his liberty to come and go as he pleases is restrained, no matter how slight such restraint may be." (Citations and punctuation omitted.) *State v. Nelson*, 261 Ga. 246, 247 (1) (b) (404 SE2d 112) (1991). But not every taking of a person into custody by a peace officer constitutes an arrest. "Arrest" by definition denotes taking into custody an "offender against the penal laws, based on probable cause." OCGA § 17-4-40 (procedures for issuance of an arrest warrant in Criminal Procedure Code). See also OCGA §§ 17-4-20 (authorization of arrests "for a crime"); 17-4-60 (grounds for arrest of "an offender" by a private person). See also *Terry v. Ohio*, 392 U. S. 1, 16 (II) (88 SC 1868, 20 LE2d 889) (1968) (recognizing that the Fourth Amendment applies to a seizure of a person which does not rise to the level of an arrest, which is defined "in traditional terminology" as a seizure which "eventuate[s] in a trip to the station house and prosecution for crime" and which is lawful only when the arresting officer "is apprised of facts sufficient to warrant a belief that the person has committed or is committing a crime"); LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 5.1 (a) (4th ed. 2006).

Although this case presents an issue of first impression in Georgia, the custody authorized by an order to apprehend pursuant to OCGA §§ 37-3-41 (a) and 37-7-41 (b) is plainly civil *protective* custody, not a criminal arrest. See *Davis v. Charter-By-The-Sea*, 183 Ga. App. 213, 215 (1) (358 SE2d 865) (1987) (OCGA § 37-7-41, which provides "for the involuntary delivery, by a peace officer, of a patient suffering from alcoholism or drug abuse to an 'emergency receiving facility' for the purpose of obtaining an examination of that person . . . envisions a civil arrest and custody and delivery").[5] The common

---

(3) Discovering or seizing the fruits of the crime for which the person has been arrested; or

(4) Discovering or seizing any instruments, articles, or things which are being used or which may have been used in the commission of the crime for which the person has been arrested.

OCGA § 17-5-1 (a). See also *United States v. Robinson*, 414 U. S. 218, 232-235 (III) (94 SC 467, 38 LE2d 427) (1973) (consistent with the Fourth Amendment, the person of a suspect under custodial arrest based on probable cause may be searched incident to the arrest); *Gustafson v. Florida*, 414 U. S. 260, 263-267 (I), (II) (94 SC 488, 38 LE2d 456) (1973) (accord); LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 5.2 (a) (4th ed. 2006).

[4] "An actual touching of a person with a hand is not essential to constitute a valid arrest. If the person voluntarily submits to being considered under arrest or yields on condition of being allowed his freedom of locomotion, under the discretion of the officer, the arrest is complete." OCGA § 17-4-1.

[5] See also *Dept. of Human Resources v. Long*, 217 Ga. App. 763, 764-765 (458 SE2d 914) (1995) (discussing a superior court's authority to civilly commit a pretrial detainee who is incompetent to stand trial, utilizing the criteria and procedures set forth in the Mental Health Code); *Williams v. Smith*, 179 Ga. App. 712, 713-716 (2) (348 SE2d 50) (1986) (where one is taken into custody pursuant to a procedurally valid certificate of a physician authorizing involuntary

thread running through the criminal procedure statutes discussed above is that authority to make a criminal arrest arises from a determination that there is probable cause to believe the person is an offender against the penal laws. Under Georgia's Mental Health Code, by contrast, taking a person into civil custody is not an arrest of a criminal offender based on probable cause. Other jurisdictions have reached the same conclusion with respect to similar statutes. See, e.g., *State v. Friend*, 711 SW2d 508, 510 (Mo. 1986) (person transported to jail for detoxification and safekeeping pursuant to civil statute was not under arrest); *State v. Lawrence*, 648 P2d 1332 (Ore. App. 1982) (person taken into protective civil custody for detoxification was not arrested in the criminal sense); *Cordell v. Weber*, 673 NW2d 49 (S.D. 2003) (person transported to jail for emergency mental health evaluation was not under arrest).[6] As a result, we hold that a peace officer executing an order to apprehend pursuant to OCGA §§ 37-3-41 (a) and 37-7-41 (b) does not thereby arrest the person to be examined such that a search incident to arrest is authorized.[7]

---

mental treatment under OCGA § 37-3-41 (a), the resulting civil detention is not "unlawful" and does not give rise to cause of action for false imprisonment because the detention is procured by civil process analogous to an arrest warrant); Valerie J. Wilkinson, "Amendments to Georgia's Mental Health Statutes: the Latest Attempt to Provide a Solution to the Problem of the Chronically Mentally Ill," 36 Emory L. J. 1313 (Fall, 1987); James C. Whelchel, 11 Ga. Jur. §§ 42:9, 42:10 (August, 2006); Charles R. Adams III, Ga. Law of Torts, § 29-4 (2007 ed.).

[6] See also *United States v. Gallop*, 606 F2d 836, 838 (9th Cir. 1979) (where statute characterized custody of abusive persons for transportation to a detoxification center as protective custody and not arrest, search of person not permitted as search incident to arrest). Cf. *State v. Kennel*, 546 P2d 1156, 1157 (Ariz. App. 1976) (equating taking of custody of an intoxicated person for the purpose of transporting him to the local alcoholic reception center with a custodial arrest for purposes of a search of the person).

[7] Certainly, an officer who is transporting a person in a patrol car may, consistent with the Fourth Amendment, perform a suitably limited search for weapons to protect his own safety and that of the transported person and others in the area. *Stotts v. State*, 199 Ga. App. 316, 317 (2) (404 SE2d 635) (1991). Such a search, while it is "a serious intrusion upon the sanctity of the person ... and ... is not to be undertaken lightly," *Terry v. Ohio*, 392 U. S. at 16 (II) (footnote omitted), is much less intrusive than the full search permissible incident to a criminal arrest. *Corley v. State*, 236 Ga. App. 302, 304-305 (1) (a) (512 SE2d 41) (1999) ("a frisk is conducted solely for the purpose of insuring the safety of the officer and of others nearby, not to procure evidence for use at a subsequent trial," and "must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer"; in conducting a frisk for weapons, the officer must first pat down the outer surface of the detainee's clothing and only intrude beneath the surface if he comes upon something which feels like a weapon). We note that in this case the State does not seek to defend the search as a *Terry*-type frisk for weapons, even one extended under the "plain feel" doctrine. See *Howard v. State*, 220 Ga. App. 579, 581-582 (1) (469 SE2d 746) (1996) (if in the course of a lawful *Terry* pat-down of a suspect's outer clothing a police officer feels an object whose contour or mass makes its identity as contraband immediately apparent, the contraband may be seized under the "plain feel" or "plain touch" corollary to the "plain view" doctrine). Instead, the State stridently insists that the officer was authorized by the civil Order to Apprehend to arrest Lindsey, that Lindsey was in fact under arrest "when he was placed in handcuffs and knew [that] he was not free to leave and that his liberty was in fact restrained," and that, incident to

Nor does a search of a civil detainee before being placed in a patrol car, absent some valid reason for the officer to take custody of the clothing, container, or bag searched, come within the ambit of allowable inventory searches. An inventory search of property found on the person or in the possession of an arrested person before placing the arrestee in jail is reasonable and constitutionally permissible if conducted in accordance with standard police practice. *Illinois v. Lafayette*, 462 U. S. 640, 643-645 (II) (103 SC 2605, 77 LE2d 65) (1983). Inventory searches support several governmental interests, including the need to safeguard the facility by preventing the introduction of objects which could be used to harm other prisoners or the detainee himself; protection of the police from danger; protection of the detainee's property while it remains in police custody; protection of police from false claims and disputes over lost or stolen property; and ascertaining or verifying the identity of the person being incarcerated. See id.; *South Dakota v. Opperman*, 428 U. S. 364, 369 (96 SC 3092, 49 LE2d 1000) (1976); *United States v. Edwards*, 577 F2d 883, 893 (II) (C) (5th Cir. 1978); LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 5.3 (4th ed. 2006). "A police inventory of some possession of the arrestee, such as a suitcase [or the arrestee's clothing], presupposes that the police had some valid reason for taking custody of that object, for it is only because of such taking of custody that the police can be said to have some obligation to safeguard the contents." LaFave, Search and Seizure, A Treatise on the Fourth Amendment, § 5.5 (a) (4th ed. 2006). Thus, an inventory search which is not necessary to achieve the recognized custodial goals of such a search is not permissible. *Gaston v. State*, 155 Ga. App. 337 (270 SE2d 877) (1980). In jurisdictions that have considered the question, inventory searches have been permitted before a person was placed inside the secure area of a jail, even where the person was not under arrest but was being held in protective custody such as for detoxification.[8] We find no controlling precedent, however, authorizing a full inventory search on the basis that a person will be trans-

---

the "arrest," the officer "was authorized to search [him] . . . to determine if [he] had any items on his person which [were] tangible evidence of the commission of a crime." Given the long-recognized distinction between a criminal arrest and a civil detention, this position is unsupportable.

[8] See, e.g., *State v. Friend*, 711 SW2d at 510-511 (inventory search is permissible regardless of whether a person is brought into a jail for detoxification and safekeeping pursuant to a civil statute or because of a criminal arrest); *State v. Toto*, 465 A2d 894, 896-898 (N.H. 1983) (inventory search of property of person taken into protective custody and lodged at the police station for detoxification was permissible); *Cordell v. Weber*, 673 NW2d at 54-55 ("rationale for inventory searches applies equally to criminal arrestees and civil detainees," such as involuntary commitment protective custody).

ported to another location in a patrol car.[9]

Because the law enforcement officer in this case lacked any reason to believe that a search more intrusive than a *Terry*-type pat-down was necessary to protect his own and Lindsey's safety en route to the mental health facility, and because the officer lacked probable cause to believe that Lindsey had committed any crime, a full search of Lindsey's person before placing him in the patrol car was an unreasonable intrusion. Accordingly, the trial court erred in denying Lindsey's motion to suppress the drugs found during that search.

*Judgment reversed. Johnson, P. J., and Miller, J., concur.*

DECIDED NOVEMBER 30, 2006.

*Clark & Towne, David E. Clark, Jessica R. Towne,* for appellant.
*Daniel J. Porter, District Attorney, Lisa A. Jones, Assistant District Attorney,* for appellee.

---

[9] See *State v. Lippert,* 856 P2d 634, 638-639 (Or. 1993) (inventory search before placing person inside jail for a nonemergency civil "detox hold" was permissible, but result would be different if the item searched were not something the person was going to take into the secure facility); *State v. Lawrence,* 648 P2d at 1336-1337 (where person was taken into protective civil custody for detoxification, only pat-down search of the person and limited inventory search, not including opening closed containers, was permissible).