A90A0084. HUDGINS v. BAWTINHIMER et al.
(395 SE2d 909)

POPE, Judge.
Appellant William B. Hudgins brought suit against appellees CPC Parkwood Hospital, Dr. Gary G. Bawtinhimer, Dr. David C. Cook and Dr. William I. Wieland, alleging false imprisonment, inten-

tional infliction of emotional distress and breach of contract and RICO against CPC as a result of his involuntary commitment pursuant to court order of October 1, 1986, to CPC Parkwood Hospital for evaluation and treatment of drug dependency. Hudgins was released by order of the DeKalb Probate Court on October 23, 1986, when CPC Parkwood's petition pursuant to Chapter 3 of Title 37 of the Official Code of Georgia Annotated was dismissed. Dr. Bawtinhimer, Dr. Cook and Dr. Wieland each examined and evaluated Hudgins and recommended that Hudgins be involuntarily detained for treatment. The trial court granted Dr. Bawtinhimer's motion for summary judgment and the motions to dismiss for insufficient service of process made by Dr. Cook and Dr. Wieland.

1. Because Hudgins has the right to directly appeal the grant of summary judgment to Dr. Bawtinhimer, OCGA § 9-11-56 (h), he also has the right to have this court review rulings of the trial court otherwise not directly appealable. *Southeast Ceramics v. Klem*, 246 Ga. 294 (1) (271 SE2d 199) (1980); *Seaboard Coast Line R. v. Mobil Chem. Co.*, 172 Ga. App. 543 (1) (323 SE2d 849) (1984). Thus, we have jurisdiction to consider his enumerations of error concerning Dr. Cook, Dr. Wieland and certain discovery issues.

2. The trial court granted summary judgment to Dr. Bawtinhimer, one of the psychiatrists who evaluated Hudgins and recommended that his involuntary commitment be continued, on the basis that Hudgins had presented no evidence that the procedure followed was defective and that the trial court found the process followed by Dr. Bawtinhimer was valid. In *Williams v. Smith*, 179 Ga. App. 712 (2) (348 SE2d 50) (1986), this court discussed in detail what is required to be shown by a plaintiff to sustain a false imprisonment claim in the context of an involuntary commitment for drug dependency. The trial court correctly applied the holding of *Williams*: "Where one is taken into custody pursuant to a procedurally *valid* certificate of a physician [or a court order as set out in OCGA § 37-3-41 (b)] authorizing involuntary mental treatment, the resulting detention is not 'unlawful.' " *Williams*, supra at 716. "An action for false imprisonment will lie where a person is unlawfully detained under a void process, or under no process at all, and cannot be maintained where the process is valid, no matter how corrupt may be the motives of the person suing out the process or how unfounded the imprisonment may be. [Cit.]" (Punctuation omitted.) *Williams*, supra at 714.

By his affidavit based on his personal knowledge, Dr. Bawtinhimer showed that he complied with the provisions of the law in his examination and evaluation of Hudgins and that he acted in good faith. In opposition, Hudgins relies on the certified copy of the order of the probate court dismissing the petition for involuntary commitment. The order reads in its entirety: "This matter came on for hear-

ing on the petition of CPC Parkwood Hospital pursuant to Georgia Code Ch. 37-3. Upon the motion of the respondent, William Hudgins, the petition was dismissed." From this, coupled with language from a certified copy of the brief filed in the probate court in support of the motion that resulted in the order set out above, Hudgins argues that he has adduced evidence that the process used to involuntarily commit him was grossly defective and void. Hudgins points to the case of *Sigmon v. Womack*, 158 Ga. App. 47 (2) (279 SE2d 254) (1981), for the proposition that "an order 'upon the motion' specifies, without more, the reasons upon which the order was decided." We disagree. In Division 2 of *Sigmon*, the court merely explained that when a trial court denies a motion for new trial, the statutory requirement that it specify the grounds for the decision is satisfied by stating in the order that the motion for new trial is denied upon the grounds enumerated in the motion. We do not agree that *Sigmon* means that when a court's order is silent on the reason for its action, it necessarily follows that the court adopted whole the arguments advanced in the brief in support of the prevailing side. It is clear from the statutory scheme of involuntary commitment that the court might find the petition should be dismissed for reasons other than defective or void process, including a finding that involuntary treatment is not needed. See OCGA §§ 37-7-81 and 37-7-81.1. For these reasons, the trial court correctly found the order of the probate court was not res judicata on the issue of the validity of the process used.

Hudgins argues the trial court improperly considered medical records that were privileged, confidential, included hearsay and were not certified in connection with Dr. Bawtinhimer's motion for summary judgment and therefore it was error to grant the motion. However, this issue is completely pretermitted because exclusive of the medical records is Dr. Bawtinhimer's personal recollection as given in his affidavit. As shown above, this evidence is sufficient to show compliance with the involuntary commitment process. At issue in this case is not the correctness of the medical diagnosis made by the doctors involved, but rather whether the procedure used was valid. Although Hudgins argues many points regarding what he perceives to be the bad motives of the doctors and hospital (primarily that the commitment was done to gain revenue from Hudgins' insurance company), none of this is relevant to the issue of false imprisonment. As more fully discussed in *Williams*, supra, such conduct might support an action for malicious use of process, id. at 714, but is completely irrelevant to the issue of false imprisonment. The grant of summary judgment to Dr. Bawtinhimer was proper.

3. Hudgins argues the trial court erred in dismissing the complaint against Dr. Cook for insufficient process. The record shows the complaint was filed on October 13, 1988. Service was not attempted

until November 21, 1988, more than 30 days after the statute of limitation had run. The record shows service was attempted by leaving a copy of the summons and complaint with Dr. Cook's office manager, who was not a registered or authorized agent for process. Dr. Cook was not personally served until March 6, 1989. The trial court found that the November 21, 1988 service on the office manager was not valid and that Dr. Cook put Hudgins on notice of the alleged insufficiency of service in his answer filed on December 20, 1988, and again on February 2, 1989 in his motion to dismiss. The trial court ruled that Hudgins was guilty of laches and was not diligent in his efforts to perfect service so as to have the late service of March 6, 1989 relate back to the filing of the complaint.

We affirm. Hudgins argues that service on the office manager should be good service on Dr. Cook because Dr. Cook was on the premises at the time. We disagree. In a similar case, the Supreme Court held that leaving a summons and complaint with an employee who was not an agent for service of the person intended to be served did not meet the clear requirements of OCGA § 9-11-4 (d) (7) and that the statute means exactly what it says. *Bible v. Bible*, 259 Ga. 418 (383 SE2d 108) (1989). Hudgins attempts to distinguish *Bible* on the basis that the defendant in that case was not on the premises. Aside from the fact that nothing in the opinion in *Bible* states whether or not the defendant was there at the time service was made, the holding of the Supreme Court is clear that service must be by the method prescribed by the statute; in this case, *personal* service. It matters not that Dr. Cook may have received notice of the suit. Service in the manner prescribed is necessary. *Bible*, supra at 419.

4. Hudgins argues the trial court erred in dismissing his complaint against Dr. Wieland for insufficiency of service. Hudgins first attempted service on Dr. Wieland at the hospital on October 17, 1988, but service was returned "non-est." Sometime later, Hudgins' counsel called Dr. Wieland's home number and spoke to a woman there who gave him an address. Believing the address to be in Fulton County, counsel had service attempted by second original, but, it too was returned "non-est." Twenty-eight days passed before counsel made an agreement with counsel for the hospital, who thought he might also represent Dr. Wieland, to see if he could arrange for acknowledgment of service. This was accomplished on January 3, 1989, with the filing of his answer. The trial court, after hearing argument and considering the evidence, found Hudgins had not exercised due diligence.

"As we held in *Childs v. Catlin*, 134 Ga. App. 778, 781 (216 SE2d 360) [(1975)]: 'the correct test must be whether the plaintiff showed that he acted in a reasonable and diligent manner in attempting to insure that a proper service was made as quickly as possible.' The trial judge must determine, exercising a legal discretion, whether the

plaintiff was diligent in his efforts. [Cits.]

"Here the trial judge heard argument and considered the affidavits filed. Based thereon he found, in his discretion, that defendant's motion should be granted. Although excuses were offered, we can not hold that the plaintiff was diligent, as a matter of law." *Webb v. Murphy*, 142 Ga. App. 649, 650 (236 SE2d 840) (1977) (dismissal affirmed on twenty-five-day delay in perfecting service).

5. Hudgins argues the trial court erred in denying his motion to compel discovery against CPC Parkwood and in granting a protective order to non-party Charter Peachford Hospital. Hudgins has not identified the specific discovery requests at issue, but instead refers only to the trial court's order denying the discovery. It appears the requests seek information relating to CPC Parkwood's decision to confer staff privileges on Dr. Cook and Dr. Bawtinhimer. The requests of non-party Charter Peachford Hospital apparently seek information on its billing practices and insurance reimbursement. Hudgins' theory of recovery in his RICO claim is that CPC Parkwood engaged in the practice of admitting patients just to get insurance money. However, the only basis for this pointed out in the record is a newspaper article discussing insurance abuse in the psychiatric care field. The trial court's order denied the requests on the basis that the material sought is privileged and confidential. Having examined the record before us, we question, in addition, the relevance of the material sought. " 'In such interlocutory rulings of the trial court as the sustaining or overruling of objections to interrogatories and decisions as to whether answers are or are not sufficient, this court will reverse only upon a showing of a clear abuse of discretion.' [Cits.]" *Smith v. Bass*, 131 Ga. App. 557, 559 (206 SE2d 541) (1974). We discern no such abuse here.

*Judgment affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED JULY 13, 1990.

*S. Lee Storesund*, for appellant.

*Webb, Carlock, Copeland, Semler & Stair, Wade K. Copeland, Davis S. Thomson, Hart & Sullivan, Rush S. Smith, Jr., Brynda S. Rodriguez, Long, Weinberg, Ansley & Wheeler, Robert D. Roll, Glenn E. Kushel, Diane M. Janulis*, for appellees.