A96A2069. RIDGEVIEW INSTITUTE, INC. v. HANDLEY.
(481 SE2d 531)

POPE, Presiding Judge.

Plaintiff/appellee Hubert Handley filed suit against defendant Ridgeview Institute, Inc./appellant, seeking damages for false imprisonment based upon his involuntary commitment at the hospital. The trial court denied Ridgeview's motion for summary judgment, and this appeal follows our grant of Ridgeview's application for interlocutory review of the trial court's order.

On Saturday, March 20, 1993, Kay Dunn, a psychiatric nurse and plaintiff's daughter, called Dr. Ronald Rosen, a psychiatrist and co-defendant in this action, at his personal residence. She told Dr. Rosen that her father had tied up her mother in the house, that he had loaded guns and was threatening to use them on his wife and himself, and that he was threatening to burn down his house. She also told the doctor that her father was paranoid, that he had acted irrationally in the past, and that he had a long history of physical abuse against his wife.

Following this conversation, Dr. Rosen filled out a Form 1013 authorizing a peace officer to detain Handley and bring him to

Ridgeview, an emergency receiving facility authorized by the State to accept patients on an involuntary, emergency basis for evaluation. Handley was picked up by two Cobb County sheriffs later that Saturday and admitted to Ridgeview as an involuntary patient at 3:40 p.m. Although Dr. Rosen certified on the 1013 certificate that he had personally examined Handley and found him to be a mentally ill person requiring involuntary treatment and a person presenting a substantial risk of imminent harm to himself or others, no personal examination was actually conducted.

Handley telephoned his son, Joey Handley, approximately ten minutes after he was admitted at Ridgeview. His son, accompanied by two of Handley's other daughters, arrived at the hospital a short time later. Joey and one of the daughters were appointed as Handley's personal representatives, and Handley signed forms acknowledging this appointment. The admitting nurse claims that Handley refused to sign other forms presented to him acknowledging his right to retain counsel and his right to seek a protective order or habeas corpus relief as required by OCGA § 37-3-44, but Handley claims he was never informed of these rights. No notation was placed in Handley's file regarding his refusal to sign these forms.

Handley was evaluated by a psychiatrist at Ridgeview the next day at 3:30 p.m. and was found not to be in need of continued hospitalization. He was discharged that evening at approximately 7:00 p.m. At no time during his 24 hour hospitalization did Handley, or either of his personal representatives, request an attorney or assistance in preparing a habeas corpus petition.

1. False imprisonment is an intentional tort and not a tort of negligence. *Stewart v. Williams*, 243 Ga. 580 (1) (255 SE2d 699) (1979). Therefore, an essential element of a claim for false imprisonment is an unlawful arrest or detention. *Scott Housing Systems v. Hickox*, 174 Ga. App. 23 (1) (329 SE2d 154) (1985). "With regard to the element of 'unlawfulness' in the tort of *false* imprisonment, the law has always made a fundamental distinction between a detention effectuated pursuant to process and detention which is not predicated on process. 'An action for false imprisonment will lie where a person is unlawfully detained under a void process, or under no process at all, and can not be maintained where the process is valid, no matter how corrupt may be the motives of the person suing out the process or how unfounded the imprisonment may be.' [Cit.] Thus, when the detention is predicated on *no process*, false imprisonment *is* an available remedy and liability depends upon whether a detention without supporting process was legally authorized under the circumstances. [Cit.] When the detention is predicated upon *procedurally valid process*, false imprisonment is *not* an available remedy, regardless of the motives upon which the process was secured, because

detention effectuated pursuant to procedurally valid process, such as an arrest warrant, is not 'unlawful.' " *Williams v. Smith*, 179 Ga. App. 712, 714 (2) (348 SE2d 50) (1986).

The same analysis is applied to claims for false imprisonment arising from involuntary mental examinations and commitments under OCGA § 37-3-40 et seq. The issue of the "unlawfulness" of a detention is determined "as in any other false imprisonment case by deciding whether the detention was predicated upon *procedurally* valid process." Id. at 715. See also *Kendrick v. Metro Psychiatric Center*, 158 Ga. App. 839 (282 SE2d 361) (1981). Thus, this Court has established the rule that "[w]here one is taken into custody pursuant to a procedurally *valid* certificate of a physician authorizing involuntary mental treatment, the resulting detention is not 'unlawful.' Although such detention may give rise to other claims, a cause of action for false imprisonment is not among them." *Williams v. Smith*, 179 Ga. App. at 716. See also *Heath v. Peachtree Parkwood Hosp.*, 200 Ga. App. 118 (4) (407 SE2d 406) (1991); *Hudgins v. Bawtinhimer*, 196 Ga. App. 386 (2) (395 SE2d 909) (1990).

In this case, there is no question that the 1013 certificate signed by Dr. Rosen was facially valid for Ridgeview's purposes and under our holdings in *Williams*, *Heath* and *Hudgins* could not form the basis for a claim against Ridgeview for unlawful detention.

Handley contends, however, that his claim for false imprisonment is not based upon his initial admission pursuant to the 1013 certification, which is the "process" by which his detention was effected. Instead, Handley argues that a "lawful" detention became "unlawful" when Ridgeview continued to detain him after allegedly failing to provide him with notice of his right to counsel and notice of his right to seek a protective order or habeas corpus relief as mandated by OCGA § 37-3-44.

The trial court accepted Handley's reasoning and ruled that the requirement of "procedurally valid process" for involuntary mental treatment as set forth in *Williams* was intended to extend to compliance with all of the notification requirements of OCGA § 37-3-44. We disagree and reverse the trial court.

As discussed above, the tort of false imprisonment is an intentional tort. *Stewart v. Williams*, 243 Ga. at 581. If we were to extend the definition of "process" in the manner advanced by Handley and the trial court, then every negligent act or violation of law accompanied by a detention — for example, the failure to read *Miranda* warnings after a valid arrest — could give rise to a claim for false imprisonment. This would, in effect, eliminate the element of intent from the tort of false imprisonment and create a cause of action for negligent false imprisonment, which is a tort our law does not recognize. Id. at 581-582. "To constitute a false imprisonment, the act of the

defendant in confining the plaintiff must be done with the intent of causing a confinement. If the confinement is due to the defendant's negligence, the latter may be liable as for negligence, but the action is then governed by the rules and principles of the tort of negligence, according to which the plaintiff is required to show actual damage. In other words, there can be no such tort as a negligent false imprisonment which of itself makes the defendant liable without proof of the invasion of some interest other than the bare interest in freedom from confinement." (Citations and punctuation omitted.) *Baggett v. Nat. Bank &c. Co.*, 174 Ga. App. 346, 349 (2) (330 SE2d 108) (1985). We therefore reaffirm our holding in *Williams*, supra at 716, that "[w]here one is taken into custody pursuant to a procedurally *valid* certificate of a physician authorizing involuntary mental treatment, the resulting detention is not 'unlawful.' Although such detention may give rise to other claims, a cause of action for false imprisonment is not among them." Accordingly, the trial court erred in ruling that Handley has a viable claim for false imprisonment based upon Ridgeview's alleged failure to provide the statutory notices required by OCGA § 37-3-44.

2. We also hold that Handley cannot maintain an independent claim for intentional infliction of emotional distress. "The only emotional distress suffered by [Handley] was in connection with [his] alleged false imprisonment and [he] has no separate and independent tort claim for emotional distress." *Heath v. Peachtree Parkwood Hosp.*, 200 Ga. App. at 120. Therefore, to the extent that Handley's complaint sets forth a claim for emotional distress, summary judgment was proper.

3. We also find that the trial court erred in failing to grant Ridgeview's motion for summary judgment on Handley's negligence and negligence per se claims. "To state a cause of action for negligence in Georgia, the following elements are essential: '(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.' [Cit.]" *Bradley Center v. Wessner*, 250 Ga. 199, 200 (296 SE2d 693) (1982). Therefore, assuming arguendo that Handley can establish that Ridgeview breached its legal obligation to provide the notifications required by OCGA § 37-3-44, Handley must still be able to prove he suffered actual damages as a proximate cause of Ridgeview's negligence. *Stewart v. Williams*, 243 Ga. at 581; *Cannon v. Street*, 220 Ga. App. 212 (3) (469 SE2d 343) (1996).

Here, the record is clear that Handley's claimed injury, his

detention, did not proximately flow from Ridgeview's alleged negligent act. Even if Ridgeview failed to give Handley the required statutory notice mandated by OCGA § 37-3-44, there is no evidence that this failure resulted in Handley being denied access to legal counsel or the courts. Likewise, there is no evidence that Handley, or either of his children appointed as his legal representatives, desired a legal resolution to his involuntary commitment. Further, even if Handley had wanted to seek a protective order or file a habeas petition, such an action would have been moot because Handley was discharged before any pleading could have been filed with any court. Finally, there is no evidence that Handley was prejudiced by the lack of counsel under the circumstances of this case. If Handley had managed to retain an attorney within that 24 hour period, there is nothing the attorney could have done without a court order to compel Ridgeview to release Handley any sooner than it did. Ridgeview's own doctors did on their own initiative what any attorney would have requested; they evaluated Handley within the time period mandated by OCGA § 37-3-43 and immediately released him. Therefore, Ridgeview's alleged failure to provide Handley with statutory notice regarding his right to counsel and his right to seek a protective order or habeas corpus petition did not proximately cause Handley any injury.

While proximate cause is ordinarily a question for the jury, plain and indisputable cases may be decided by the court as a matter of law. See, e.g., *Deese v. NationsBank of Ga.*, 222 Ga. App. 275 (1) (474 SE2d 18) (1996); *Ermutlu v. McCorkle*, 203 Ga. App. 335, 338 (2) (416 SE2d 792) (1992). We find the question of proximate cause could be decided as a matter of law in this case. Accordingly, the trial court erred in failing to grant Ridgeview's motion for summary judgment on Handley's negligence claims.

4. Because we are reversing the trial court's denial of Ridgeview's motion for summary judgment on all of Handley's claims against Ridgeview in this action, it is unnecessary for us to address the additional grounds for reversal raised in this appeal.

*Judgment reversed. Andrews, C. J., and Smith, J., concur.*

DECIDED JANUARY 13, 1997 —
RECONSIDERATION DENIED FEBRUARY 10, 1997 —

*Ray H. McCard, Jr.*, for appellant.
*Jackel, Rainey, Marsh & Busch, Dana L. Jackel, Larry W. Ramsey, Jr.*, for appellee.